Peter R. Afrasiabi, Esq. (Bar No. 193336)
    pafrasiabi@turnergreen.com
Christopher W. Arledge, Esq. (Bar. No. 200767)
    carledge@turnergreen.com
John Tehranian, Esq. (Bar No.211616)
    jtehranian@turnergreen.com
**TURNER GREEN LLP**
535 Anton Boulevard, Suite 850
Costa Mesa, California 92626
Telephone:   (714) 434-8750
Facsimile:    (714) 434-8756

Attorneys for Plaintiff
Mavrix Photo, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAVRIX PHOTO, INC., a Florida corporation,<br><br>          Plaintiff,<br><br>v.<br><br>BRAND TECHNOLOGIES, INC., an Ohio corporation; BRANDTECH, a business form unknown; GOSSIPGIRLS.COM, a business form unknown; CELEBRITY-GOSSIP.NET, a business form unknown; BRAD MANDELL, an individual; and DOES 1-10 INCLUSIVE,<br><br>          Defendants.<br>_____ | Case No. **09-2729 PSG (JCx)**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' BRAND TECHNOLOGIES AND BRAD MANDELL'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION, *FORUM NON CONVENIENS*, OR TRANSFER VENUE**<br><br>**[Declarations of Peter Afrasiabi and Gareth Thomas filed concurrently herewith]**<br><br>Hearing Date:   07/13/09<br>Hearing Time:   1:30 p.m.<br>Courtroom:        790, Roybal Building |

///

///

# TABLE OF CONTENTS

I.    INTRODUCTION...............................................................................2

II.   FACTS.............................................................................................4

    A.   Mavrix and this Lawsuit..............................................................4

    B.   Defendants' Website and Extensive California Contacts....................5

        1.   Defendants' Commercial Activities Through the Websites..............5

        2.   The Websites' Active, Consumer-involved Content....................5

        3.   Defendants Have Hired and Use a California Company to Design
            and Program the Very Websites that Contain Infringing Images....6

        4.   Defendants Are Officially Partnered with California Entities.........6

    C.   Summary of the Mandell Declaration Falsehoods............................7

    D.   Mavrix' Forum Choice Should Be Respected................................10

III.  PERSONAL JURISDICTION STANDARDS.........................................10

    A.   Personal Jurisdiction Evidentiary and Burden Standards.................10

    B.   The Internet and Personal Jurisdiction Standards...........................11

IV.   GENERAL JURISDICTION EXISTS GIVEN THE DEFENDANTS'
     SUBSTANTIAL AND CONTINUOUS COMMERCIAL CONTACTS.............12

    A.   Factors At Issue in General Jurisdiction.....................................12

    B.   The General Jurisdiction Factors Are Met...................................13

V.    SPECIFIC JURISDICTION ALSO EXISTS.........................................16

    1.   Defendants Have Conducted Business in California and Purposefully
        Availed Themselves of California.............................................16

    2.   The Claims Arise Out of the Nature of the Contacts with California.......18

    3.   Exercising Jurisdiction Over Defendants Is Reasonable..........................19

        a.   Extent of Jurisdiction....................................................20

        b.   Burden....................................................................20

        c.   Extent of Conflict.......................................................20

        d.   Forum State's Interest..................................................20

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL
JURISDICTION

      e.      **Most Efficient Judicial Use of Resources**............................................**20**

      f&g.  **Importance of this Forum and Existence of Alternative Forum**.....**21**

  **4.**     **Conclusion**..................................................................................**21**

**VI.**  **IF THE COURT HAS ANY QUESTIONS, LEAVE TO CONDUCT DISCOVERY SHOULD BE GRANTED**............................................**21**

**VII.**  **THE MOTION TO DISMISS/TRANSFER LACKS MERIT**............................**21**

  **A.**    **The Forum Non Conveniens Doctrine Is Inapplicable**................................**21**

  **B.**    **The Motion to Transfer Venue is Meritless**.................................................**23**

**VII.**  **CONCLUSION**.........................................................................................**23**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF AUTHORITIES

**Cases**

*American Eyewear, Inc. v. Peeper's Sunglasses*, 106 F. Supp. 2d 895, 903 (N.D. Tex. 2006) ........................................................................................................................ 17

*AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ................. 11

*Bancroft & Masters, Inc v. Augusta Nat., Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) ......... 12

*Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) ................................................ 12

*Carrot Bunch Co. v. Computer Friends*, 218 F. Supp. 2d 820, 826 (N.D. Tex. 2002) ........ 18

*Cody v. Ward*, 954 F. Supp. 43, 47 (D. Conn. 1997) ........................................................... 19

*CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1265 (6th Cir. 1999) ................................... 13

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-19 (9th Cir. 1997) ............................ 12

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) ............................................ 11

*EDIAS Software, Inc. v. Basis Int'l, Ltd.*, 947 F. Supp. 413, 417 (D. Az. 1996) ............... 14

*Gator.com v. L.L.Bean, Inc.*, 341 F.3d 1072, 1077 (9th Cir. 2003) ..................................... 14

*Hanson v. Denckla*, 357 U.S. 235, 250-51 (1958) ................................................................ 11

*Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1229 (9th Cir. 2003) ................................................................................................................ 11

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ................. 12

*Inset Systems, Inc. v. Instruction Set, Inc.,* 937 F. Supp. 161 (D. Conn. 1996) .................... 17

*International Show Co. v. Washington*, 326 U.S. 310, 315 (1945) ........................................ 11

*Keeton v. Hustler*, 465 U.S. 770, 774-75 (1984) ................................................................. 17

*Maritz v. Cybergold, Inc.*, 947 F. Supp. 1328, 1332-33 (E.D. Mo. 1996) ........................... 17

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 572-73 (2nd Cir. 1996) ............................................................................................................................. 14

*Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 672-73 (S.D. Cal. 2001) ....... 21

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) ............................. 11

*Rio Properties, Inc. v. Rio Int'l Interklink*, 284 F.3d 1007, 1020 (9th Cir. 2002) .......... 11, 18

14948.1

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

*Schwartzenneger v. Fred Martin Motor Co.*, 374 F.3d 797, 802-03 (9th Cir. 2004)...........16

*Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)..........................................16

*Sinochem Int'l Co. Ltd. v. Malavsia Int'l Shipping*, 127 S. Ct. 1184, 1190 (2007) .............22

*Stomp, Inc. v. NeatO LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999).......................................17

*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1176 (9th Cir. 2006) .....................21

*WebZero LLC v. ClicVU, Inc.*, 2008 WL 1734702 (C.D. Cal. 2008)....................................17

*Wells Fargo & Co. v. Wells Fargo Express*, 556 F.2d 406, 430 n.24 (9th Cir 1977) ..........21

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) .......................13

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) ....................12

**Statutes**

28 U.S.C. § 1404................................................................................................................23

Fed. R. Civ. P. 30..............................................................................................................23

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

## I.   INTRODUCTION

This case is about Hollywood and celebrities, and celebrity photographs.  It is about Los Angeles and this District because this is the epicenter of celebrities, celebrity sightings, celebrity behavior and ultimately celebrity photographs that document the celebrity record. Celebrities live in Los Angeles and are photographed by Plaintiff Mavrix – which has an L.A. office, California Registered Agent and pays California Franchise Tax Board taxes – and its L.A.-based photographers here.  Defendants regularly take these images that belong to Mavrix and post them on their two celebrity gossip web sites, causing this lawsuit.

To escape this forum, Defendants claim under penalty of perjury that California lacks personal jurisdiction over them because they have ***never used the websites "to perform any commercial transactions of any kind***." (Mandell Delc. ¶ 10-11) (emphasis added).

Here's a ticket-receipt to the Ringling Bros. Circus at the Staples Center bought through ***Defendants' web site's "Ticket Store":***



*See* Declaration of Peter Afrasiabi, Exhibits A-C.  The sale of that ticket through Defendants' "Ticket Store" is exactly the type of commercial activity and selling of merchandise that subjects Defendants to personal jurisdiction here.  After all, that is why Defendants said "Thank You" on the receipt – they now have some of our money.  This is a "commercial transaction," and given the fact that the fees collected by Defendants were almost 100% of the ticket price it is a rather lucrative "commercial transaction" at that.

But it is not just the selling of tickets to Angelinos to attend L.A. events that establishes jurisdiction and venue here.  Defendants' web site even ***advertises L.A. jobs in the LA area with L.A. companies to L.A. residents***:



Afrasiabi Decl. Exh. E. They also advertise for discounts on San Diego hotels.  *Id.* Exh. P.

There is more still.  Defendant uses a California entity – in this District no less – to design and program its web sites, the same web sites that contain myriad infringing images stolen from Plaintiff.  Moreover, Defendants officially "partner" with California outfits such as Glam Media and Fox News as represented on their web sites.  Finally, Defendants' attempt to describe their site as a passive, informative site is facially false: Defendants offer

blogs, subscription newsletters and Gossip Club memberships to California subscribers, and also solicit California residents to provide celebrity images and information for posting.  That is highly interactive and California-consumer involved, and is simply not the stuff of a passive information web site.

Defendants' motion is meritless and, in light of the facts in this record, Mandell's Declaration is, to put it generously, shocking.

## II.    FACTS

### A.    Mavrix and this Lawsuit

The major epicenter of celebrity presence and celebrity sightings is of course Los Angeles, California.  Mavrix is a Florida company with an office in Los Angeles that secures and publishes photographs of celebrities.  Mavrix is registered with the California Secretary of State and pays its California minimum franchise tax fees.  *See* Declaration of Gareth Thomas ¶ 3-4 & Exh. A.  Mavrix publishes the photographs on its web site or licenses them to other companies to use.  *Id.* ¶ 3.

Defendants have repeatedly taken Plaintiffs' copyrighted photographs and posted the photos on their web sites.  These on-going acts of copyright infringement are what prompted this lawsuit, which was not filed in California simply because Mavrix's lawyers are located in California.  In any event, one such set of stolen images is the "Fergie" images attached to and referenced in the Complaint.  *Id*. ¶ 4-6.

But there are other images owned by Plaintiff that Defendants have unlawfully used beyond those specifically identified in the Complaint, and those additional images are also at issue in this litigation.  In particular, Plaintiff has paid California-based photographers to take pictures of California celebrities in California.  And those pictures have also been infringed by Defendants and placed on Defendants' web site.  These images are images of at least the following celebrities: Lindsay Lohan, Christina Aguilera, Britney Spears, Rihanna, Audrina Patridge, and Alj and AJ, all of which photographs were taken by a Mavrix' Los Angeles-based photographers for Mavrix in Los Angeles.  *Id.* ¶ 7 & Exhs. B-G (Lohan, Aguilera, Spears, Rihanna, Audrina Patridge, and Ali and AJ, respectively).

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Exhibits B-G are the actual photographs that belong to Mavrix yet are on Defendants' website, which was not authorized by Mavrix.  *Id.*

**B.      Defendants' Website and Extensive California Contacts.**

**1.      Defendants' Commercial Activities Through the Websites.**

Defendants **sell tickets** to Californians to attend L.A. events on their web site. Specifically, GossipGirls.com's Ticket Center portion of its website lists available tickets for LA sporting, theatrical, musical and family events that Defendant offers for sale and sells on its web site.  *See* Decl. of Peter Afrasiabi Decl., Exh. A.  Indeed, one could buy tickets from Defendants' web site to attend the L.A. Philharmonic on July 12, just as this firm bought a ticket to the circus for the 12th.  *Id.* Exhs. A-D.

Second, as well as selling tickets to Los Angelians for Southern California events, Defendants' web site even **advertises jobs** in the LA area with L.A. companies.  Registered Nurses in Torrance, Media Buyers is L.A., and Pharamaceutical Medical Device Sales Personnel in Santa Monica can all secure jobs in those areas through use of Defendants' web site which advertises the jobs.  *Id.* Exh. E.  In this vein, Defendants also advertise on their site for discounted hotel rates for San Diego hotels.  *Id.* Exh. P.

**2.      The Websites' Active, Consumer-involved Content.**

But it's not just selling tickets and the advertising of jobs that occurs on this alleged non-commercial, passive, informational billboard.  Defendants' web sites also boast and accomplish these interactive features:

(1)      A **subscription-based newsletter** that allows people – California residents – to subscribe to secure real time information and pictures about celebrities and the latest gossip from Hollywood.  Subscribers can even subscribe to a "feed" to get a real time update of celebrity news through the web site's "Syndication" function.  *Id.* Exhs. F and G.

(2)      Offer a membership to a **Gossip Center Club** that California residents can be a member of.  *Id.* Exh. H.  And these newsletters and Gossip Clubs are where

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

infringing activity has even occurred through the dissemination of Plaintiff's pictures.

(3)   Provide a ***blog*** system on their web site where users – California residents included – can post comments about celebrities and start comment blog chains.  *Id.* Exhs. E. at 2-3, F at 2-3, and I.

(4)   Seeks users to ***submit and upload*** pictures or other information about celebrities.  It goes without saying that the users who post pictures of celebrities going about their daily activities are heavily centered in Los Angeles, not Ohio.  *Id.* Exh. J.

### 3.   Defendants Have Hired and Use a California Company to Design and Program the Very Websites that Contain Infringing Images.

Still yet, the California connections run deeper.  Defendants have hired a California company – from Ojai, California in this District – to design and program the web site, specifically Incendia Technologies who built, hosts, designed and programmed Defendants' web sites, which web sites have included the infringing images at issue in this case (Incendia is of course a possible DOE Defendant upon discovery as to its exact involvement in the copyright infringement).  *Id.* Exh. K.  As well as surely rendering false the statement that they have no contracts with California entities (Mandell Decl. ¶ 13), all of these contacts go to specific jurisdiction here: Defendants have willfully infringed photographs of celebrities and posted those photographs on this California-designed and programmed web site (and then allowed email newsletter blasts to be sent to California residents, which blasts contain the infringed images or links to them).

### 4.   Defendants Are Officially Partnered with California Entities.

Beyond the California web designer and programmer, Defendants list as their ***official partners*** two California entities.  Specifically, Fox News Corp LLC, a California LLC is a listed partner as is Glam Media, an entity with offices in California (and New York and Germany, but notably not with offices in the Western Division of the Northern District of Ohio where Defendants want this case sent to).  *Id*. Exhs. L & M (Fox news and Glam Media, respectively).

14948.1

6

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Moreover, Defendants have launched a new feature on their web site that allows infringed pictures to be accessed by consumers through their cellular phones. *Id.* Exh. N. The cell company– as another "partner" to Defendants – is Quattro Wireless, a company with reported offices in L.A. and Irvine, California. *Id.* Exh. J.

**C.    Summary of the Mandell Declaration Falsehoods.**

| MANDELL DECLARATION | TRUTH OF THE CLAIM AND THE EVIDENCE IN FACT |
|---|---|
| 9. The Company does not conduct business in California other than to make payment to businesses for photographs purchases from the internet. | False.<br><br>The evidence:<br><br>(1) Defendants sell tickets to Californians for events throughout California. In fact, they allow ticket sales at numerous California locations, from Santa Ana to Long Beach to Los Angeles to Fresno. Afrasiabi Decl. Exhs. A-C. That is "business" under any definition of the word.<br>(2) Defendants advertise California jobs to Californians through their web site (and no doubt get compensated for allowing the posting of such job ads). *Id.* Exh. E That, too, is business.<br>(3) Defendants advertise for vacations and hotels in San Diego. *Id.* Exh.P<br>(4) Defendants have two official partners who are California-based outfits, Fox News and Glam Media. *Id.* Exhs E, L + M That is "business" notwithstanding any parsing of the word Defendants offer in reply.<br>(5) Defendants have hired and use a California entity (in this District) to design and program their web sites, the same web sites that contain the infringing images. *Id.* Exhs. E at 3; K That, too, is "business." |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

(6)  Defendant also offers a mobile phone version of their website that allows access to content through a cell phone, and the cellular provider Defendants have claimed to partner with is a company with offices in Los Angeles and Irvine, California.  *Id.* Exhs. N and O

***But critically, this claim alone demonstrates a basis to assert jurisdiction.  This case is about the theft of photographs and Defendants admit to paying California photographers for photographs, which is the core nature of the dispute here.  Thus, this amount of "business" alone is related to the dispute.***

10. The Company uses and maintains two Websites – www.celebrity-gossip.net and www.gossipgirls.com. I am primarily responsible for overseeing the content of the Websites and I know of, and approve all changes made thereto. The Websites are merely informative. For instance, the Websites contain: (1) a short statement of the business purpose of the Company; (2) news and photographs related to celebrities; and (3) the contact information for the Defendants' business. Attached hereto as exhibit "B" are printouts of www.celebrity-

False, the web sites are not "merely informative" and "passive" (as claimed in the Motion at 5:24) and do far more than the three minor things described in paragraph 10.

The evidence:
(1)  The web sites have user blogs where users – Californians included – can post their own comments on celebrity photographs and start blog discussion chains about the photographs or celebrities, or post advice questions.  *Id.* Exhs. E, F, I.
(2)  The web sites allow users – Californians also – to subscribe to newsletters and receive newsletter updates about new content.  Users can even subscribe to a feed to get real time updates when the site is updated.  *Id.* Exhs. F at 2 and G.
(3)  The web sites seek users to submit and upload celebrity photographs or information to add to the web site.  *Id.* Exhs. E at 2 and J.
(4)  Everything in the box above in response to Mandell ¶ 9 identifies uses that far

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

| | |
|---|---|
| gossip.net and www.gossipgirls.com Webpages. | transcend "merely informative" ones. (5)  The websites have a Gossip Club.  *Id.* Exh. H at 2. |
| 11. The Company does not use, and has never used, its Websites to distribute, buy, license or sell any products or services, or perform any commercial transactions of any kind (for instance, online transaction processing, electronic date interchange or electronic funds transfers).  No merchandise is, or has ever been, sold, licensed or distributed through the Websites. | False.<br>The evidence:<br>  (1)  Defendants sell tickets to Californians for events throughout California.  In fact, they allow ticket sales at numerous California locations, from Santa Ana to Long Beach to Los Angeles to Fresno.  *Id.* Exhs. A-D. That is a "use" of the websites to "sell products or services or perform a[] commercial transaction" under any definition of the phrase.  That is also a sale or distribution of merchandise through the web site, rendering the second sentence false also.<br>  (2) Defendants advertise California jobs to Californians through their web site (and no doubt get compensated for allowing the posting of such job ads). *Id.* Exh. E.  That, too, is a "use" of the websites to "sell products or services or perform a[] commercial transaction" under any definition of the phrase.<br>  (3) Defendants also advertise for San Diego hotels.  *Id.* Exh. D |
| 13. Neither the Company nor I have entered, and have never entered into any contract of insurance, indemnity, or guaranty covering any person, property, or risk located within the State of California. | Probably False.<br>The Evidence:<br>(1)  Defendants have contracts with Fox News Corp., Glam Media and with Incendia Technologies, their noted partners.  *Id.* Exh. E.  It would be pretty remarkable if those contracts did not provide for any indemnity in the event of certain claims or acts by Defendants (that is a very standard contractual term as this Court knows); |

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

|  | indeed, the common law and UCC would imply at least equitable indemnity rights into the contracts.<br>(2)  Defendants also have partnered with a third party cell company with offices in Los Angeles and Irvine, California, which cell service facilitates the illegal dissemination of Plaintiff's photos.  *Id.* Exhs. N and O. |
|---|---|

### D.    Mavrix' Forum Choice Should Be Respected.

Hollywood and Los Angeles are the center of the celebrity works.  Mavrix has a Los Angeles office.  Mavrix pays Los Angeles-based photographers to take photographs in Southern California of celebrities in California.  Mavrix pays minimum franchise tax fees and has a Registered Agent in Califronia precisely because it intentionally seeks to avail itself of California's laws and conduct business here.  *See* Thomas Decl. ¶ 4.

For Mavrix to litigate in Ohio simply because Defendants – a celebrity internet web site company – have chosen to hide from California, yet poach images from California photographers and a company with a California office, is burdensome on Mavrix.  Key witnesses and evidence are in fact in California, including the photographers who took the images, the underlying celebrities who were photographed, the Incendia entity that designs and programs the web site that contains the infringing images, as well as the partners of Defendants who are in Los Angeles.

## III.    PERSONAL JURISDICTION STANDARDS

Defendants' motion does not identify the relevant procedural and evidentiary burdens as well as the relevant internet-based law on personal jurisdiction.  Each are briefly addressed so the Court has the correct prism through which to view the record evidence.

### A.    Personal Jurisdiction Evidentiary and Burden Standards.

In determining whether the plaintiff has made the requisite showing, the Court must resolve in Plaintiff's favor any conflicts in the parties' evidence.  *See AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  Where a defendant's motion is based upon written materials, as is the case here, "the plaintiff need only make a

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

prima facie showing of jurisdictional facts.  In such cases, [the court] only inquire[s] into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction."  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (internal citations omitted).  The prima facie showing, of course, is gauged by the preponderance of the evidence standard.  *Rio Properties, Inc. v. Rio Int'l Interklink*, 284 F.3d 1007, 1020 (9th Cir. 2002).  Where there are sufficient prima facie facts, the motion should be denied.  *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements, Ltd*., 328 F.3d 1122, 1229 (9th Cir. 2003).

## B.    The Internet and Personal Jurisdiction Standards.

"As technological progress has increased the flow of commerce between States, the need for jurisdiction has undergone a similar increase."  *Hanson v. Denckla*, 357 U.S. 235, 250-51 (1958).  The evidence, conflicts being viewed in Plaitniff's favor, *see supra* § III.A, is tested against the governing state standard, which here due to California's Long Arm Statute is coextensive with the outer limits of due process under the state or federal constitutions.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  For due process to be satisfied, defendants here need only have "minimum contacts" with California such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice."  *International Show Co. v. Washington*, 326 U.S. 310, 315 (1945).  Personal jurisdiction exists if there is general or specific jurisdiction over the defendants.  *Toeppen*, 141 F.3d at 1320.  General jurisdiction exists where the defendant has substantial or continuous and systematic activities in the forum state, and specific jurisdiction exists where (1) defendant has availed itself of business in California, (2) the claim arises from a defendant's California-related activities, and (3) the application of jurisdiction is reasonable.  *Id.*

Within this established framework, the nature of a defendant's web site triggers unique issues in the jurisdictional inquiry.  Indeed, the seminal case in this area (not cited by Defendants) is *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).  *Zippo* analyzes personal jurisdiction in the internet world by analyzing the nature of

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

1  the web site and the commercial activity over the internet.  *Id.* at 1124.  The *Zippo* court

2  categorized internet use along a spectrum: (1) where the defendant does business over the

3  web site (yes to jurisdiction); (2) where a web site allows a user to connect to the host site

4  and share information (maybe, yes – look to the level of interactivity and commerce); and

5  (3) a truly passive website that does nothing more than display information about the

6  defendant's company (no jurisdiction on that alone).  *Zippo*, 952 F. Supp. at 1124.

7      *Zippo's* approach has been approved by the Ninth Circuit (as well as other circuits).

8  *See Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008) (approving *Zippo's* sliding

9  scale approach); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-19 (9th Cir. 1997)

10  (same).

## IV.  GENERAL JURISDICTION EXISTS GIVEN THE DEFENDANTS' SUBSTANTIAL AND CONTINUOUS COMMERCIAL CONTACTS.

### A.  Factors At Issue in General Jurisdiction.

13      "[D]ue process is not offended by a State's subjecting the corporation to its in

14  personam jurisdiction when there are sufficient contacts between the State and the foreign

15  corporation."  *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414

16  (1984).  To have general jurisdiction, then, a defendant must engage in "continuous and

17  systematic general business contacts" with the forum state.  *Id.* at 416.  Factors to consider

18  in this inquiry are "whether the defendant makes sales, solicits or engages in business in the

19  state, serves the state's markets, designates an agent for service of process, holds a license,

20  or is incorporated there."  *Bancroft & Masters, Inc v. Augusta Nat., Inc.*, 223 F.3d 1082,

21  1086 (9th Cir. 2000) (finding no general jurisdiction because defendant did not advertise

22  toward California and had a truly passive website, i.e., one consumers could not use to

23  make purchases, but finding specific jurisdiction).  These *Bancroft* factors are illustrative

24  and not all are required.  As applied to the facts here, general jurisdiction exists.

### B.  The General Jurisdiction Factors Are Met.

27      First, Defendants do engage in commerce through their web site in California.  The

28  web site is a platform to sell tickets to celebrity and other media events, i.e., rock shows,

plays, musicals, the circus, etc. They also have in fact sold tickets. *See* Afrasiabi Decl. Exh. A. Defendants' web site allows the sale – and solicits California consumers to buy – tickets for events in California, ranging from Fresno to Santa Ana and from Long Beach to Los Angeles. Defendants receive money for ticket sales to Californians. *See id*. Thus, these commercial acts alone render Defendants subject to personal jurisdiction here, *see Bancroft*, 223 F.3d at 1086, and render the web site the highly interactive kind in *Zippo* that justifies jurisdiction. *See Zippo*, 952 F. Supp at 1124.

Second, as well as commercial ticket sales, Defendants' web sites advertise jobs in Los Angeles to people in California, as well as advertising hotels for rent in San Diego. This is specific, targeted marketing in California, not simply generalized web advertising of Defendants' services. By entering an agreement with a company (apparently Monster.com, Afrasiabi Decl. Exh. E) to allow targeted advertising of jobs to Californians, Defendants have intentionally established a relationship such that they have to reasonably foresee consequences in California. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1999) (nonresident software provider subject to jurisdiction where it entered agreement with on-line marketing company to distribute software). These acts (and the San Diego advertising, Exh. P) are the solicitation of commerce and business in California, and this certainly serves the State's needy employment market, therefore also warranting jurisdiction. *See Bancroft*, 223 F.3d at 1086.

Put simply, a company cannot (1) avail itself of the benefits of selling tickets to Californians to attend myriad events in California and (2) avail itself of the benefits that derive from advertising L.A.-based jobs to Californians (or advertise for San Diego hotels), and fairly contend that it is unreasonable to answer in Court here. *See, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) (noting that a "forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.").

Although not binding, *Gator.com v. L.L.Bean, Inc.*, 341 F.3d 1072, 1077 (9th Cir. 2003), *rev'd on other grounds,* 398 F.3d 1125 (9th Cir. 2005) (en banc), is illustrative of how a court can look at the fact pattern here.  There, like here, the defendant did not have an office or registered agent in the forum.  But the defendant did make sales into California, market in California and have vendors in California.  That is like here, where defendants sell tickets in California, expressly market to Californians (jobs), seek uploads and material on celebrities, the vast majority of which will obviously come from California, and have numerous partners in California.[1]

Having engaged in extensive business in this state, general jurisdiction attaches as a matter of course.  *See EDIAS Software, Inc. v. Basis Int'l, Ltd.*, 947 F. Supp. 413, 417 (D. Az. 1996) (substantial, on-going advertising on the internet can subject a nonresident to general jurisdiction); *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 572-73 (2nd Cir. 1996) (general jurisdiction exists where, among other things, there are sales into forum state, advertising into forum state, and contracts with entities in forum state).  This is also why Defendants' argument at page 8:22-23 – that they never marketed in California and have never performed any services here – is unequivocally meritless. This evidence (*supra* § II.C, chart and cited evidence) adduced by Plaintiff, even if Defendants' try to spin the Mandell Declaration and controvert the evidence, carries the day under the preponderance standard.  *See AT&T Co.*, 94 F.3d at 588 (the Court must resolve in Plaintiff's favor any conflicts in the parties' evidence).

But there is more evidence of general business ties to California that warrants general jurisdiction.  Namely, Defendants have an agreement with a California entity – in this District – to design and program the web sites.  *See* Afrasiabi Decl. Exhs. E at 3 & K. Those very web sites are the ones that have historically and continue to incorporate, copy

---

[1]     *Gator.com* was taken *en banc* by the Ninth Circuit and due to an intervening settlement the case was dismissed as moot by the *en banc* court.  398 F.3d 1125.  Thus, even if not formal precedent due to the *en banc* grant over the panel opinion, it is certainly an example of how Judges can look at these issues.

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

1   and post photographs that belong to Plaintiff Mavrix.  That contractual relationship is an

2   important component of business in this State that allows and facilitates the very acts of

3   infringement complained of herein.  *See Bancroft*, 223 F.3d at 1086.

4        Next, Defendants engage in other substantial business in California.  To understand

5   this, the Court needs to understand Defendants' entire business model aside from ticket

6   sales – it is providing celebrity photographs, news and gossip to consumers and by securing

7   massive web site traffic, Defendants secure large advertising revenues from advertisers.

8   *See* Thomas Decl. ¶ 8.  To this end, Defendants have several ***partners*** – none in Ohio

9   notably.  Two of the four listed formal affiliated partners – who no doubt have contractual

10  agreements with Defendants – are located in California, such as Fox News and Glam

11  Media.  These partnering agreements help generate exposure for Defendants' sites and

12  thereby drive more traffic and thereby secure more ad revenue from advertisers.  *See*

13  Thomas Decl. ¶ 8.  As well as the listed California partners, Defendants also offer a

14  specific cell-based service for consumers to secure celebrity news, photos and gossip via

15  wireless waves.  That service is due to an agreement with an L.A. and Irvine-officed

16  California partner also, Quattro Wireless.

17        Finally, Defendants have a highly interactive web site.  They have blogs to discuss

18  celebrity photos, which blogs allow people to upload comments and start discussion chains.

19  Afrasiabi Decl. Exhs. E, F, I and J.  They have a Gossip Center Club that people can

20  become members of.  *Id.* Exh. H at 2.  They have a subscription-based newsletter with a

21  "feed" to get rapid updates to celebrity photos and gossip content.  *Id.* Exhs. F and G.  And

22  they solicit consumers – California ones in particular since California is the heartland of

23  celebrities – to upload pictures of celebrities.  *Id.* Exh. E + J.  The sites seek and proffer

24  advice on personal issues (*Id.* Exh. I) and ask users to even vote on gossip-type topics.  *Id.*

25  Exh. H at 2.  Highly interactive sites like this, where commerce also occurs, establish

26  jurisdiction.  *See Zippo*, 952 F. Supp. at 1124.  For these reasons, these facts demonstrate

27  the proper existence of general jurisdiction because Defendants' entire business is one that

28  has continuous and systematic contacts with California.  It is the antithesis of the defendant

in *Helicopteros*, who made one trip to Texas to negotiate a contract, accepted checks from Texas and sent some personnel to Texas for training.  *Helicopteros*, 466 U.S. at 416.

Accordingly, advertising jobs to Californians, selling tickets and engaging in commerce in California, utilizing a California entity to design and program the very site that contains infringing materials, and partnering with California-based entities is the act of doing business "in" the State that subjects one to the general jurisdiction of California.

## V.   SPECIFIC JURISDICTION ALSO EXISTS

The Ninth Circuit applies a three-pronged test to determine if a district court may exercise specific jurisdiction:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Toeppen*, 141 F.3d at 1320.  As described below, Plaintiff has met its burden, *see Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990), and Defendants cannot make a compelling case to the contrary.

### 1.   Defendants Have Conducted Business in California and Purposefully Availed Themselves of California.

For all the reason outlined above in Section IV, this prong is readily met by the Defendants' California commercial activities.  *See Schwartzenneger v. Fred Martin Motor Co.*, 374 F.3d 797, 802-03 (9th Cir. 2004) (defendant's distribution of goods to forum is purposeful availment; "*[i]n return for these benefits and protections a defendant must – as a quid pro quo – submit to the burdens of litigation in that forum*.") (internal quotations omitted) (emphasis added).

Defendants try to skirt this by claiming that their web site is a passive informative one.  Not so.  It is as passive as a bull in a china shop.  Here, the web sites encourage users to join blogs, submit information and subscribe to newsletters, join a Gossip Club, post

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

advice, and even vote on gossip issues.  It enables commerce and commercial transactions.  That is not a one-way passive statement of information.  *See Toeppen*, 141 F.3d at 1320.  Courts have found web sites like this sufficient to confer jurisdiction.  For example, in *Maritz v. Cybergold, Inc.*, 947 F. Supp. 1328, 1332-33 (E.D. Mo. 1996), the Court rejected the argument that the site was passive, because the web site invited users to join a mailing list and because the web site intentionally advertised to users of the site.  *See also Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F. Supp. 161, 165 (D. Conn. 1996) (purposeful availment met where defendant's site directed advertising towards forum residents).

Moreover, here users are encouraged to subscribe to newsletters, which certainly includes Californians and then the newsletters are sent into California.  This alone is enough since there is a slim difference between a newsletter and a magazine.  *See Keeton v. Hustler*, 465 U.S. 770, 774-75 (1984) (purposeful availment where defendant distributed a magazine to thousands of forum residents).  Also, users upload blog comments on celebrity photos and news to Defendants' sites, and there is advertising directed straight to users in California – such as the ads for jobs in L.A. or for hotels in San Diego.

Thus, this is an interactive web site of the first order as in *Zippo*, and so Defendants have purposefully availed themselves of California and purposefully directed advertising – jobs and tickets as well as photo upload requests and voting – to California residents.  *See also WebZero LLC v. ClicVU, Inc.*, 2008 WL 1734702, *5-6 (C.D. Cal. 2008) (finding jurisdiction where website sold and advertised its services and products); *Stomp, Inc. v. NeatO LLC*, 61 F. Supp. 2d 1074, 1077 (C.D. Cal. 1999) (applying *Zippo*, and finding jurisdiction because web site allowed commercial transactions over the internet to California consumers); *American Eyewear, Inc. v. Peeper's Sunglasses*, 106 F. Supp. 2d 895, 903 (N.D. Tex. 2006) (web site that advertised and transacted business with forum residents was subject to specific jurisdiction); *Carrot Bunch Co. v. Computer Friends*, 218 F. Supp. 2d 820, 826 (N.D. Tex. 2002) (finding specific jurisdiction over interactive internet website that used to sell printer inkjet products).

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Even if the site was somehow labeled "passive," when the other commercial activities are considered, the defendants are still subject to personal jurisdiction under *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002). There, the Court held that even operating a passive web site would expose one to jurisdiction if it was coupled with "something more – conduct directly targeting the forum…" *Id.* Here, that "something more" is the commercial sales and targeting of California-specific advertisements to California residents. *Rio Properties*, thus, is fatal to Defendants even if the (court agreed their site was a passive one.

For these reasons, Defendants' contention that their web sites are merely passive, informative ones like in the *Cybersell* and *Mink* cases is flat wrong. Mr. Mandell's Declaration at paragraph 10 is false in its description of the relevant web sites as identified in the Chart above. Thus, these web sites are not passive ones, and Defendants' argument fails. Ultimately, Defendants have engaged in acts aimed at and which have an effect in California, satisfying the first prong. *See Bancroft*, 223 F.3d at 1087.

### 2. The Claims Arise Out of the Nature of the Contacts with California.

The claims here arise out of the theft, uploading and posting of Mavrix' photographs – many of which were taken here – on Defendants' web sites. This has been directed to Mavrix, which has an office in L.A. and is a taxpaying entity of this State with a Registered Agent in the State. And the entity that has designed and programmed the very web sites for the Defendants that contain infringing materials is located here in California – Incendia Media of Ojai, California.

In addition, the infringing pictures were posted on the web site and directed to California residents through the Defendants' e-mail newsletter and the no doubt massive number of hits Defendants' receive from California, each of which transmission of Defendants' photographs was an act of infringement. This supports specific jurisdiction. *See EDIAS*, 947 F. Supp. at 420 (material posted on web site and sent by email to forum residents gives rise to specific jurisdiction in claim over nature of material sent; there defamation, here copyright infringement); *Cody v. Ward*, 954 F. Supp. 43, 47 (D. Conn.

1997) (fraudulent representations by email and telephone to forum resident give rise to specific jurisdiction).

Next, because Mavrix has an L.A. office and pays California state taxes, it is thus also injured here when its images are infringed.  This is all the more so when the images infringed are ones taken in L.A. of L.A. celebrities as is the case for many images at issue as identified in the Thomas Declaration.  Thus, injury occurs here notwithstanding Defendants' assumption to the contrary (Mot. at 13:1-12).

Finally, even if the massive volume of evidence about commercial transactions and business dealings in California did not exist, Defendant Mandell's own Declaration establishes the second prong and a basis for jurisdiction.  Specifically, he claims that he does no business in California other than *business related to securing photographs of celebrities*.  Mandell Decl. ¶ 9.  But that alone is enough for a lawsuit involving infringement of photographs, many of which were taken in L.A. of L.A.-based celebrities. That is, this case is about photographs and the unlawful infringement of them.  It is about photographs of celebrities taken in Los Angeles (and elsewhere) and the Defendants' unlawful copying of those pictures.  That Defendants have admitted business contacts with California for the procurement of photographs really begins and ends the inquiry in a lawsuit involving ownership and copying of photos that in fact belong to Plaintiff. Accordingly, Defendants have pled themselves into this Court's jurisdiction.

### 3.    Exercising Jurisdiction Over Defendants Is Reasonable.

The reasonableness inquiry is governed by *Toeppen's* seven factor test: "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  *Toeppen*, 141 F.3d at 1319. "No one factor is dispositive; a court must balance all seven."  *Id.*  Here, all factors favor the Plaintiff.

### a.    Extent of Interjection

Defendants have extensively interjected themselves into California.  Their entire business revolves around L.A. and California celebrities.  This is why they have partnered with California entities, not Ohio ones.

### b.    Burden

There is no burden to defend this suit in California, where the Plaintiff has offices and where the Plaintiff has suffered injury in any event.  Defendant is large entity with obviously sufficient resources to hire two law firms to defend it (the Quintana Law Group on the pleadings and the local lawyers in Ohio who sent the letters attached to Mr. Quintana's Declaration).  In any event, Mr. Mandell's declaration does not even assert a burden exists to being sued in California.

### c.    Extent of Conflict

There is no conflict with Ohio.  This is a federal copyright case and does not revolve around any state concerns about state common law or state statutory law.  Nor does Ohio have any lawful public policy interest in not allowing its citizens who do business in California from answering to California courts.

### d.    Forum State's Interest

California has an interest in adjudicating this dispute because Mavrix is a tax paying entity with offices here.  It avails itself of California's laws and pays taxes for it and has every right to seek redress for wrongs committed against it in this State.

### e.    Most Efficient Judicial Use of Resources

No one can reasonably argue that federal judicial resources are more efficiently used by Ohio than California judges.  The only inefficiency at play is the wasted resources that have to be devoted to this motion addressing issues that are facially meritless with a declarant who has made unequivocally false statements.

### f&g.   Importance of this Forum and Existence of Alternative Forum

Plaintiff pays taxes here and has an office here.  Many of the stolen pictures were pictures taken in L.A. of L.A. celebrities.  This forum has every interest in the dispute.

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

1   Ohio, by contrast, is simply where Defendant has chosen to set up shop to run its business

2   that deals in stealing L.A.-taken photographs.  Ohio is not an alternative forum to Mavrix

3   who conducts business in Florida and L.A.

4        **4.    Conclusion**

5        The question before the Court is whether "the plaintiff's pleadings and affidavits

6   make a prima facie showing of personal jurisdiction."  *Dole Food Co.*, 303 F.3d at 1108.

7   The answer to that question is an unequivocal "yes."  This Court should deny the motion.

8   **VI.   IF THE COURT HAS ANY QUESTIONS, LEAVE TO CONDUCT**

9          **DISCOVERY SHOULD BE GRANTED.**

10        The Ninth Circuit has held that a plaintiff should be permitted jurisdictional

11   discovery "where pertinent facts bearing on the question of jurisdiction are controverted . . .

12   or where a more satisfactory showing of the facts is necessary."  *Wells Fargo & Co. v.*

13   *Wells Fargo Express*, 556 F.2d 406, 430 n.24 (9th Cir 1977); *Orchid Biosciences, Inc. v. St.*

14   *Louis Univ.*, 198 F.R.D. 670, 672-73 (S.D. Cal. 2001).

15        Here, to the extent the Court is not satisfied that the current factual record establishes

16   Defendants' jurisdictional contacts, Plaintiff should be entitled to take discovery to further

17   address these issues.  (For example, Plaintiff obviously cannot identify the number of hits

18   on Defendants' sites that originate from California, a fact uniquely in Defendants'

19   possession, which is also relevant evidence.  *See Cybersell*, 130 F.3d at 419.).

20   **VII.  THE MOTION TO DISMISS/TRANSFER LACKS MERIT.**

21        **A.    The Forum Non Conveniens Doctrine Is Inapplicable.**

22        A plaintiff's choice of forum is entitled to deference in a forum non conveniens

23   analysis.  *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1176 (9th Cir. 2006).

24   Dismissal under forum non conveniens is only proper "when an alternative forum has

25   jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . .

26   oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's

27   convenience."  *Sinochem Int'l Co. Ltd. v. Malavsia Int'l Shipping*, 127 S. Ct. 1184, 1190

28   (2007).

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

This standard is not met, and it's not close.  Litigating in California can hardly be said to be an oppressive or vexatious experience for a company that advertises L.A. jobs to Angelinos and sells tickets to L.A. events to Angelinos.  If it is vexing, Defendants should not take Californians' money in commercial transactions.  Moreover, Defendant is a large company with successful web sites,[2] has two sets of lawyers on its case and so can hardly claim any difficulty or oppressive experience litigating here.  Any inconvenience to Defendant is the inconvenience of being sued, not of being sued here.

Next, Defendants' complaint about witnesses being in Ohio has nothing to do with any inconvenience to Defendant.  (Mot. at 18).  That, even if true, inconveniences Plaintiff who has to travel to Ohio for depositions of those witnesses, but Plaintiff is not complaining.  Defendants cannot use a theoretical burden on Plaintiff to justify a transfer request for their benefit.  And as they reside in Ohio, they will have no problem securing access to the documents in their own files.  Their claim is silly.[3]

Finally, the charge that Ohio would protect Plaintiff's rights (Mot. at 16:26-28) is irrelevant to whether Plaintiff's chosen forum should be disrupted, which California forum also protects the parties' rights.  But the point also proves why Defendants' motion fails: California courts such as this one will certainly protect Defendants' rights.  Likewise, it is always the case that a defendant would prefer a jury in its home state, but that is irrelevant to whether the selected forum is appropriate.

---

[2]   Defendants' www.celebrity-gossip.net ranks in traffic as one of the top websites in the world.  Per www.alexa.com's ranking statistics, it is number 3,622.  *See* www.alexa.com, 6/29/09 search results, Afrasiabi Decl. Exh. Q.  To put that in perspective., www.msnbc.com  is ranked number 2,521, and bbc.com is ranked number 181,145.  *Id.*  There are apparently over one hundred and fifty million web sites.  *Id.*

[3]   For this reason, Defendants' statement about non-California witnesses resisting discovery (Mot. at 19) is utterly vague and nonsensical – the Ohio witnesses are their employees.  But it is also irrelevant because, as Defendants surely well-know, in federal court a subpoena can be issued in any district and a motion to compel can be filed also, so this is a red-herring issue.

14948.1                                        22

**B.     The Motion to Transfer Venue Is Meritless.**

Defendants contend that Plaintiff could have sued in Ohio and so therefore this case should be sent there.  The interests of justice and 28 U.S.C. § 1404's relevant factors do not support the request.   Those factors relevant here are: (1) defendant's contacts, (2) plaintiff's choice, (3) difference in cost, (4) availability of process, and (5) ease of access to proof.  *See Jones*, 211 F.3d at 498-99.

First, Defendants have myriad contacts with California as addressed above.  Second, plaintiff chose this forum, and is a taxpayer with an office in this forum.  Third, there is no relevant difference in cost, other than an obvious attempt to burden Plaintiff's chosen lawyers by making them travel to Ohio.  Fourth, Defendants admit that the key witnesses are party affiliates such as their employees (Mot. at 21, § B) so there is no issue in terms of discovery in this case anyway – defendants are obligated to produce the witnesses for deposition since they are party affiliated, and the depositions will occur in Ohio anyway under Fed. R. Civ. P. 30.  As their employees, Defendants can and must require them to attend depositions.  Thus, there is no burden on them whatsoever, and Defendants' misplaced citation to Rule 45 for non-parties is flawed.  Importantly, however, many third party witnesses (all identified above) are here in L.A., this district is actually the easiest district for the litigation in terms of other third party discovery.  Fifth, there is no issue in ease of access to evidence as the Ohio evidence they allude to is all in Defendants' possession already.

**VIII.  CONCLUSION**

If Defendants did not want to be haled into a federal court in this State, then they should not have built a commercial site that sells tickets at California venues and advertises California job to Californians.  This Court should respectfully deny the motion.

Dated:  June 29, 2009              **TURNER GREEN LLP**

                            /s/Peter Afrasiabi_____
                             Peter Afrasiabi, Esq.

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**