1  Andres F. Quintana, Esq. (SBN 190525)
2  Ronald G. Han, Esq. (SBN 247212)
   **QUINTANA LAW GROUP**
3  A Professional Law Corporation
4  26135 Mureau Road, Suite 101
   Calabasas, California 91302
5  Telephone:  (818) 914-2100
6  Facsimile:  (818) 914-2101
   Email: andres@qlglaw.com
7        ronald@qlglaw.com

8  Attorneys for Defendants BRAND TECHNOLOGIES, INC. and
9  BRAD MANDELL

10          **UNITED STATES DISTRICT COURT**

11          **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| MAVRIX PHOTO, INC. a Florida corporation, | ) Case No. CV09-02729 PSG (JCx) <br> ) [Complaint Filed On April 20, 2009] <br> ) |
| Plaintiff, | ) **DEFENDANTS' REPLY TO** <br> ) **PLAINTIFF'S OPPOSITION TO** <br> ) **MOTION TO DISMISS** <br> ) **COMPLAINT FOR LACK OF** <br> ) **PERSONAL JURISDICTION,** <br> ) *FORUM NON CONVENIENS*, **OR** <br> ) **TRANSFER VENUE;** <br> ) **SUPPLEMENTAL DECLARATION** <br> ) **OF BRADFORD MANDELL** |
| vs. | |
| BRAND TECHNOLOGIES, INC., an Ohio Corporation; BRANDTECH, a business form unknown; GOSSIPGIRLS.COM, a business form unknown; CELEBRITY-GOSSIP.NET, a business form unknown; BRAD MANDELL, an individual; and DOES 1-10 INCLUSIVE, | |
| Defendants. | ) Date:       July 13, 2009 <br> ) Time:       1:30 p.m. <br> ) Courtroom:  790 <br> ) Judge:      Hon. Philip Gutierrez <br> ) <br> ) <br> ) <br> ) <br> ) |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

A. PLAINTIFF FAILED TO MAKE A *PRIMA FACIE* SHOWING OF *SPECIFIC* JURISDICTION DURING THE RELEVANT TIME PERIOD OF *APRIL-MAY 2008*......................................................................................................2

B. PLAINTIFF FAILED TO MAKE A *PRIMA FACIE* SHOWING OF *GENERAL* JURISDICTION DURING THE RELEVANT TIME PERIOD OF *APRIL 2009*......................................................................................................3

C. EVEN CONSIDERING PLAINTIFF'S IRRELEVANT POST-FILING EVIDENCE, PLAINTIFF FAILED TO MAKE A *PRIMA FACIE* SHOWING OF *GENERAL* JURISDICTION ...........................................................3

   1. Plaintiff's Attempt To Create Personal Jurisdiction Through A Post-Filing Purchase Is Improper And Irrelevant .............................................................4

   2. Defendant Brand Technologies Does Not Solicit Business In California Through Advertisements On Its Websites.......................................................5

   3. Plaintiff's Conclusory Claim That Defendant Brand Technologies Contracted With A California Hosting Company Is Not Accurate, And In Any Even, Insignificant .................................................................................................6

   4. Defendants' Affiliated Partners Have Offices In California Is Insufficient To Establish Jurisdiction.....................................................................................7

   5. Defendants Purported "Interactive" Website Does Not Support Personal Jurisdiction Over Them ...............................................................................8

   6. Totality of Defendants' Contacts With The State Of California.....................9

D. EVEN CONSIDERING PLAINTIFF'S IRRELEVANT POST-FILING EVIDENCE, PLAINTIFF FAILED TO MAKE A *PRIMA FACIE* SHOWING OF *SPECIFIC* JURISDICTION.......................................................................9

   1. Defendants Have Not Purposefully Availed Themselves Of The Privileges And Protections Of California Law.................................................................9

     i.  The Defendants Conduct Business In California.......................................9

     ii. The Defendants Have Not Purposefully Directed Their Activities Toward California ...............................................................................................10

i

1

2. Defendants' Alleged Contacts With The State Of California Are Not A "But For" Cause Of Plaintiff's Alleged Claims...................................................11

3. Exercising Personal Jurisdiction Over The Defendants In California Would Be Unreasonable...........................................................................................11

E. THE COURT SHOULD DISMISS THIS ACTION ON THE BASIS OF *FORUM NON CONVENIENS*...................................................................................12

F. CONCLUSION.........................................................................................................12

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Quintana Law
Group, APC

TABLE OF CONTENTS

1

# TABLE OF AUTHORITIES

2

3  **FEDERAL CASES**

4  Amini Innovation Corp. v. JS Imports, Inc

5       497 F.Supp.2d 1093 (C.D.Cal. 2007)...............................................10

6  Asahi Metal Industry Co., Ltd. v. Superior Court

7       480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed. 2d 92 (1987) .......... 11-12

8  Ballard v. Savage

9       65 F.3d 1495 (9th Cir. 1995) ...................................................11

10  Bancroft & Masters, Inc. v. Augusta National Inc.

11       223 F.3d 1082 (9th Cir. 2000)...............................................5-6

12  Chloe, Div. of Richemont North America, Inc. v. Queen Bee of Beverly Hills, LLC

13       571 F.Supp.2d 518 (S.D.N.Y. 2008) .........................................5

14  Clarus Transphase Scientific, Inc. v. Q-Ray, Inc.

15       No. C 06-3450 JF, 2006 WL 2374738 (N.D.Cal. Aug. 16, 2006) ..................7

16  Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.

17       106 F.3d 284 (9th Cir. 1997) .................................................15

18       523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) ................................15

19  CompuServe, Inc. v. Patterson

20       89 F.3d 1257 (6th Cir. 1999)...................................................9

21  Coremetrics, Inc. v. Atomic Park.com, LLC.

22       991 F.2d 1195 (4th Cir. 1993) .................................................13

23  Doe v. Unocal Corp.

24       248 F.3d 915 (9th Cir. 2001) .................................................14

25  Farmers Ins. Exchange v. Portage La Prairie Mutual Ins. Co.

26       907 F.2d 911 (9th Cir. 1990).................................................4

27  Gator.com v. L.L.Bean, Inc.

28       341 F.3d 1072 (9th Cir. 2003)................................................. 7-8, 13

Quintana Law
Group, APC

iii

398 F.3d 1125 (9th Cir. 2005) (en banc) ........................................................ 13

Grain Rotterdam B.V. v. Shivnath Rai Harnarian Co.

284 F.3d 114 (9th Cir. 2002) .................................................................... 14

Helicopteros Nacionales de Colombia, S.A. v. Hall

466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) .................................... 4

International Shoe Co. v. Washington

326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) .......................................... 5

Jonathan Browning, Inc. v. Venetian Casino Resort, LLC

No. C 07-3983 JSW, 2007 WL 4532214 (N.D.Cal. Dec. 19, 2007) .................. 8

Kulko v. California Superior Court

436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) ..................................... 5

Schwarzenegger v. Fred Martin Motor Co.

374 F.3d 797 (9th Cir. 2004) ............................................................... 8, 12

Steel v. United States

813 F.2d 1545 (9th Cir. 1987) ............................................................... 2, 4

Stomp, Inc. v. NeatO, LLC

61 F.Supp.2d 1074 (C.D.Cal. 1999) .......................................................... 15

Zippo Mfg. Co. v. Zippo Dot Com, Inc.

952 F.Supp. 1119, 1124 (W.D.Pa. 1997) .................................................... 14


**STATE CASES**

Boaz v. Boyle & Co

40 Cal.App.4th 700, 46 Cal.Rptr.2d 888 (1995) ........................................ 5, 6

DVI, Inc. v. Superior Court

104 Cal.App.4th 1080, 128 Cal.Rptr.2d 683 (2002) ................................ 2, 4, 5

**FEDERAL STATUTES**

28 U.S.C. § 1404(a) ............................................................................. 17

Federal Rule of Civil Procedure 12(b)(3) ..................................................... 3

1    Plaintiff Mavrix Photo, Inc.'s ("Plaintiff") irremediable attempt to claim
2    general or specific jurisdiction over Defendants Brand Technologies, Inc. and
3    Bradford Mandell ("Defendants") through post-filing documents is misguided.  As
4    the Ninth Circuit has stated repeatedly, in a *specific* jurisdiction analysis "courts
5    must examine the defendant's contacts with the forum *at the time of the events*
6    *underlying the dispute* when determining whether they have jurisdiction," Steel v.
7    United States, 813 F.2d 1545, 1549 (9th Cir.1987)(emphasis added). With regards to
8    *general* jurisdiction, California courts examine the defendant's contacts when the
9    alleged conduct occurred and *at the time of service of summons*.  DVI, Inc. v.
10   Superior Court, 104 Cal.App.4th 1080, 1101 (Cal.App. 4 Dist., 2002).  Plaintiff has
11   not (and cannot) satisfy its burden of proof on either front.

12       Plaintiff's unwarranted attempt to discredit the Declaration of Brad Mandell
13   amounts to nothing more than the unfortunate elevation of rhetoric over facts and
14   basic reason.  As the applicable case law and the Supplemental Declaration of Brad
15   Mandell and attendant exhibits make clear, Plaintiff's counsel's *post hoc* purchase
16   on June 24, 2009 of tickets through Ticket Network Direct's website not only falls
17   woefully short of proving personal jurisdiction over Defendants, such a post-filing
18   transaction is irrelevant.  Further, Ticket Network Direct is a third-party, online
19   ticket store operator simply web-linked to a Brand Technologies-owned website not
20   named in the Complaint. Indeed, Plaintiff's counsel's June 24, 2009 ticket purchase
21   was the *only* ticket sale *ever* completed through that party since January 1, 2008.

22       Despite Plaintiff having copies of Defendant Brand Technologies' website
23   from *May 8, 2008* – the date of alleged infringement – all of the purported
24   documentation submitted by Plaintiff with its Opposition post-date the April 20,
25   2009 filing of the Complaint.  According to the Complaint, Plaintiff "[a]ttached
26   [t]hereto as Exhibit 3 […] screen captures of the Photos as they appeared on
27   gossipgirl.com."  Compl. ¶13.  Rather than argue the sufficiency of personal
28   jurisdiction over Defendants by relying on *those* website materials, Plaintiff

1  conspicuously chose to ignore them. Instead, faced with a motion to dismiss under

2  Federal Rule of Civil Procedure 12(b)(3), Plaintiff's counsel attempted to belatedly

3  create evidence of personal jurisdiction by visiting and transacting with various

4  website pages, *June 23, 2009* and thereafter. <u>See</u> Afrasiabi Decl., Exhs. A-C. The

5  implication is inescapable: the content of Defendant Brand Technologies' website

6  pages at the time of the claimed infringement (which are in Plaintiff's possession)

7  do not support personal jurisdiction.

8      This conclusion is further evinced through the pre-motion correspondence

9  between the parties. In response to Defendants' comprehensive "meet and confer"

10  letter pursuant to Local Rule 7-3, detailing Defendants' jurisdictional motion,

11  Plaintiff's merely replied on June 2, 2009: "We have analyzed your letter and we

12  disagree with your analysis, so we will wait for your motion(s)." Quintana Decl.,

13  Exhs. C & D. Presumably, if Plaintiff possessed any evidence supporting its

14  jurisdictional claims by June 2, 2009, Plaintiff would have enthusiastically disclosed

15  such information during the pre-motion "meet and confer" period. Plaintiff did not,

16  despite having images from Brand Technologies' website as of May 8, 2008.

17  Further, if Plaintiff thought it could obtain such information, Plaintiff would have

18  requested limited jurisdictional discovery before these motions were filed. Again,

19  Plaintiff did not. The rest of Plaintiff's Opposition amounts to an unsavory olio of

20  legal bits and pieces that, even together, are not enough for Plaintiff to meet its

21  burden of proof. Defendants respectfully request that this Court grant their motion.

22  **A. PLAINTIFF FAILED TO MAKE A *PRIMA FACIE* SHOWING OF**

23  ***SPECIFIC* JURISDICTION DURING THE RELEVANT TIME PERIOD OF *APRIL-MAY 2008*.**

24      The relevant time period for this Court analyzing specific jurisdiction over the

25  Defendants in this case is April-May of 2008. It is well established that the relevant

26  time period for purposes of this case is when the plaintiff's claims arose. As the

27  Ninth Circuit clearly and unambiguously stated in <u>Steel v. United States</u>:

28

1
2
3

> When a court is exercising specific jurisdiction over a defendant, 'arising out of or related to the defendant's contacts with the forum,' the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred.

4   813 F.2d 1545, 549 (9th Cir.1987). In this instance, Paragraph 13 of the Complaint

5   alleges that "[w]ithin days, on or about April 18, 2008, Defendants placed on

6   www.gossipgirls at least 35 images of the Photos, displaying those images for the

7   entire world to see and downloaded for free if desired." Compl. ¶13. Based on the

8   Complaint and exhibits thereto, Plaintiff's claims arose sometime between April-

9   May 2008, at the latest.   Here, Plaintiff submitted no evidence supporting this

10  Court's specific jurisdiction over the Defendants during the April-May 2008 time

11  frame.  None of the images or documents attached to the Afrasiabi Declaration fall

12  within the relevant time frame of April-May 2008.

13  **B. PLAINTIFF FAILED TO MAKE A *PRIMA FACIE* SHOWING OF**
**    *GENERAL* JURISDICTION DURING THE RELEVANT TIME**
14  **    PERIOD OF *APRIL 2009.***

15      In analyzing general jurisdiction, California courts examine the defendant's

16  contacts when the alleged conduct occurred and at the time of service of summons.

17  See DVI, Inc. v. Superior Court, 104 Cal.App.4th 1080, 1101 (2002).

18
> Exercise of general jurisdiction comports with "traditional notions of
19  fair play and substantial justice" and is "reasonable" and "fair" when
> the defendant has substantial, continuous, and systematic contacts
20  with the forum at the time the complaint is served on that defendant.

21  DVI, 104 Cal.App.4th at 1101. Here, the Defendants were served with the

22  Complaint on April 22, 2009.  Once again, the Plaintiff has failed to demonstrate

23  this Court's general jurisdiction over the Defendants, as both of the declarations and

24  the attachments thereto post-date the April 22, 2009 date by almost two months.

25  **C. EVEN CONSIDERING PLAINTIFF'S IRRELEVANT POST-FILING**
**    EVIDENCE, PLAINTIFF FAILED TO MAKE A *PRIMA FACIE***
26  **    SHOWING OF *GENERAL* JURISDICTION.**

27
28      Even assuming this Court considers Plaintiff's post-filing documents, Plaintiff

Quintana Law
Group, APC

1  still cannot show personal jurisdiction over the Defendants.  Plaintiff's claims that
2  general jurisdiction over the Defendants is proper based on five types of contacts
3  Defendants have with California.  Plaintiff is mistaken, both legally and factually.

### 1. Plaintiff's Attempt To Create Personal Jurisdiction Through A Post-Filing Purchase Is Improper And Irrelevant.

6  Plaintiff alleges in conclusory tones that Defendant's Brand Technologies'
7  "web site is a platform to sell tickets to celebrity and other media events," citing
8  Plaintiff's counsel June 24, 2009 purchase of tickets to a Los Angeles event.  See
9  Opposition 12:28, 13:1; Afrasiabi Decl., Ex. A.

10  First, Plaintiff's claim is factually wrong.  The ticket store visible on
11  www.gossipcenter.com is a private label offering provided by a third-party, online
12  ticket store called Ticket Network Direct, which is owned and operated by
13  Connecticut-based Ticket Network Inc. Mandell Decl., ¶4. When an individual
14  clicks on the ticket store through www.gossipcenter.com, he or she is directed to
15  Ticket Network Direct, not to Brand Technologies, and the website plainly identifies
16  the merchant in two prominent locations as "Ticket Network Direct."  Even the
17  alleged receipt attached to Plaintiff's counsel's declaration clearly indicates the
18  seller and contact point is not Brand Technologies website. See Afrasiabi Decl.,
19  Exhs. A and C.

20  Furthermore, according to a detailed transaction report available through the
21  Ticket Network Direct website, only *one* ticket sale has been completed through this
22  third-party site from January 1, 2008 through July 5, 2009 – the one performed by
23  Plaintiff's counsel on June 24, 2009, worth $7.60.  Mandell Decl., ¶7, Exh. F.
24  Defendant Brand Technologies' website has never received any financial payment
25  for a sale on the site as there has never been any commercial activity aside from the
26  single "purchase" by Plaintiff's counsel. Id. at ¶7.

27  Moreover, contacts with the forum that are initiated by the plaintiff violate
28  due process, which is inextricable from the personal jurisdiction analysis, and offend

Quintana Law
Group, APC

-4-

1   the notions of "fair play and substantial justice." See Chloe, Div. of Richemont
2   North America, Inc. v. Queen Bee of Beverly Hills, LLC, 571 F.Supp.2d 518, 526
3   (S.D.N.Y. 2008) ("[I]t would violate due process to permit a plaintiff to manufacture
4   personal jurisdiction by purchasing an allegedly infringing product in a plaintiff's
5   forum of choice").  Finally, this single ticket sale shows that Brand Technologies
6   has done business *with* someone in the California, but do not constitute doing
7   business *in* California. See Bancroft, 223 F.3d at 1086.  Nor have Defendants had
8   "substantial" or "continuous and systematic" commercial activity by any rational
9   measure.

### 2. Defendant Brand Technologies Does Not Solicit Business In California Through Advertisements On Its Websites.

12      Plaintiff also alleges the Defendants' websites advertise jobs in Los Angeles
13  and hotels for rent in San Diego to people in California. Opp:13:8-9.  Plaintiff
14  argues that the third-party advertising on Defendant Brand Technologies' websites
15  makes it reasonable for Defendants to foresee being haled into court in California.
16  Ninth Circuit law dictates that Plaintiff's contentions, even if true, would not
17  support a finding of general jurisdiction here.  Although Defendant Brand
18  Technologies' websites are accessible to California residents, accessibility alone is
19  not enough to support general jurisdiction, see e.g., Schwarzenegger, 374 F.3d at
20  801; Bancroft, 223 F.3d at 1086.  There is simply no evidence that Californians have
21  utilized the site in a continuous or systematic way.  Moreover, as previously alluded
22  to, the advertising agreements that Defendant Brand Technologies may have with a
23  California company "constitute doing business *with* California, but do not constitute
24  doing business *in* California." Bancroft, 223 F.3d at 1086 (emphasis added).

25      Plaintiff's reliance on CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.
26  1999) is misplaced.  The Sixth Circuit based its decision on specific, not general,
27  jurisdiction. 89 F.3d at 1267.  Further, CompuServe is simply not analogous to the
28  facts here, as it concerned the sale of goods in the forum state through a licensing

Quintana Law
Group, APC

1  agreement with a forum state resident.

2      Moreover, Plaintiff has presented no evidence that Brand Technologies

3  entered into an agreement with Monster.com relies instead on mistaken conjecture.

4  Opp:13:11-14. The Monster.com job advertisements were placed on the Defendants'

5  website not through a specific agreement with monster.com, but rather through an

6  advertising network agency, such as Google's Adsense program. Mandell Decl.,

7  ¶¶8-9, 13. The same can be said of all the advertisements on Brand Technologies'

8  websites, including Google, Value Click and Glam, and *they* control the

9  advertisements. Id.

10      These agreements are insufficient to establish general jurisdiction. For

11  instance, in <u>Bancroft</u>, the Ninth Circuit held that the defendant's television licensing

12  agreements with several California businesses, without more, could not form the

13  basis for general jurisdiction. <u>See Bancroft</u>, 223 F.3d at 1086. The licensing

14  agreements are considered "doing business with California," but not "doing business

15  in California." <u>Id</u>. The Court reasoned that "engaging in commerce with residents

16  of the forum state is not in and of itself the kind of activity that approximates

17  physical presence within the state's borders." <u>Id</u>.

18      **3. Plaintiff's Conclusory Claim That Defendant Brand Technologies**
19      **Contracted With A California Hosting Company Is Not Accurate, And In Any Even, Insignificant.**

20      Plaintiff's Opposition argues that the Defendant's Brand Technologies'

21  contract with its web hosting company, which also designed and programmed the

22  websites, is further "evidence of general business ties to California that warrants

23  general jurisdiction." Opp:14:21-22. This argument is of no moment. The Defendant

24  Brand Technologies' websites were (i) originally designed and programmed by two

25  Canadian independent contractors in 2007, who were working exclusively out of

26  Canada at the time; (ii) developed on servers located in Canada,  and (iii) at the time

27  of the alleged infringement were operating out of Canada.   Mandell Decl., ¶10.

28

Presently, the websites are hosted on servers in Austin, Texas. Id. At some point, the two Canadian independent contractors formed a new company, Incendia, Inc., in California. Id., at ¶11. None of the Defendants have any ownership interest in Incendia. Id. Although billing for website maintenance is technically through Incendia, the actual work continues to be performed in Canada. Id.

Finally, Plaintiff's claim, even if true, is insignificant, since this means shows that Defendant Brand Technologies has done business *with* someone in the State of California, but do not constitute doing business *in* the State of California.

### 4. Defendants' Affiliated Partners Have Offices In California Is Insufficient To Establish Jurisdiction.

Plaintiff argues that the Defendants are subject to this Court's jurisdiction since they "engage in ... substantial business in California" through "partnership agreements" with companies that have offices in California: Fox News, Glam Media and Quattro Wireless. Opp:15:4-11. Plaintiff's assumptions are misguided.

First, there is no formal contractual relationship Fox News, merely an informal, link-sharing agreement. Mandell Decl., ¶12. They merely reciprocally place links to stories on each other's websites several times a month. Id. Moreover, while Fox News merely has *an* office in California. See Afrasiabi Decl., Ex. L.

Brand Technologies has an agreement with Glam Media, an advertising network agency, and Glam Media shares revenue generated from advertisements it places on Brand Technologies' websites. Mandell Decl., ¶13. Glam Media does not generate or direct any traffic whatsoever to those websites. As discussed above in Part III.C.2, the Glam Media advertising agreement does not rise to the level of "systematic and continuous" contacts necessary for a California court to have general jurisdiction over Defendants. The agreement constitutes doing business "with" California, not "in" California. Schwarzenegger, 374 F.3d at 801.

Finally, Quattro Wireless ("Quatto") is a third-party company that creates mobile versions of websites and hosts them on their servers, charging a fee for the

1   service.  Mandell Decl., ¶17. Like Glam Media, Quattro also shares ad revenues

2   with Brand Technologies.  Id. To date, Brand Technologies has paid Quattro

3   Wireless more money than they have received from them.  Id.  Like Glam Media,

4   Brand Technologies' relationship with Quattro agreement does not establish

5   "systematic and continuous" contacts with California.

### 5. Defendants Purported "Interactive" Website Does Not Support Personal Jurisdiction Over Them.

8   Finally, Plaintiff argues that the "interactive" nature of Brand Technologies'

9   websites supports jurisdiction by allowing users to upload photos, post comments to

10   news stories, vote in online polls, submit questions to an advice column, and

11   subscribe to a newsletter.  Opposition 15:17.[1]  This level of interactivity cannot

12   adequately establish general jurisdiction over a non-resident defendant.

13   The Plaintiff relies on the "sliding scale" from Zippo for the proposition that a

14   highly interactive website can establish general jurisdiction.  See Zippo Mfg. Co. v.

15   Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa. 1997).  However, Zippo's

16   "sliding scale" requires more than a highly interactive website to establish general

17   jurisdiction over a non-resident defendant.  The defendant must also "clearly" do

18   business over the Internet and that business must be "substantial" or "systematic and

19   continuous" with residents of the forum state.  Gator, 341 F.3d at 1079.

20   Establishing contacts sufficient for general jurisdiction under Zippo's "sliding

21   scale" is a high hurdle.  In Coremetrics, Inc. v. Atomic Park.com, LLC, 370

22   F.Supp.2d 1013 (N.D.Cal. 2005), the court found general jurisdiction only where the

23   defendant admitted to being an online retailer, advertised its services over the

24   internet, made frequent and significant sales to residents of the forum state (between

25   ten to fifteen million dollars over a four year period), made purchases from forum

26   residents, and entered into contracts with choice-of-law provisions specifying the

27

28
_____

[1]   Additionally, Plaintiff points to a single "ticket sale" to Plaintiff's counsel. See Part III.C.1; Mandell Decl., ¶4-6.

Quintana Law
Group, APC

-8-

1   forum state. Id. at 1019-24.  Further, the defendant's

2       contacts with California taken individually would not sustain general
3       jurisdiction, the Court concludes that, based on the totality of the
    contacts, they are sufficiently substantial, continuous, and systematic
4       so as to support a finding of general jurisdiction.

5   Id. at 1024.  The facts before this Court pale in comparison. Brand Technologies had

6   made no legitimate sales through its website, and the interactive portions of the

7   websites are rarely used.   Mandell Decl., ¶14, 15.   Not a single user has ever

8   uploaded an image to either of the Defendants' websites.  Id.

9          **6. Totality of Defendants' Contacts With The State Of California.**

10       Defendants' activities in California are limited to doing business with a few

11   companies with offices in California, third-party advertisements, accessibility to

12   Californians, and the purchase of photographs from websites having payment

13   addresses in the California.  Once again, jurisdiction does not spring from merely

14   doing business "with" individuals in the State, but rather must come from doing

15   business "in" the State. Bancroft, 223 F.3d at 1086.

16   **D. EVEN CONSIDERING PLAINTIFF'S IRRELEVANT POST-FILING**
    **EVIDENCE, PLAINTIFF FAILED TO MAKE A _PRIMA FACIE_**
17   **SHOWING OF _SPECIFIC_ JURISDICTION**

18       Even disregarding, arguendo, the Ninth Circuit's controlling authority and
19   considering Plaintiff's post-filing documents, Plaintiff still cannot demonstrate
20   specific jurisdiction over the Defendants under the Ninth Circuit's three-prong
21   analysis. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).

22         **1. Defendants Have Not Purposefully Availed Themselves Of The**
23         **Privileges And Protections Of California Law.**

24       In this matter, the Defendants have not purposely availed themselves of the

25   benefits and protections of California law despite assertions that they conduct

26   business in California through ticket sales and "targeted" advertisements, and that

27   their websites are interactive.

28         **i. The Defendants Have Not Conducted Business In California.**

1    Plaintiff's assertion that Brand Technologies purposely availed itself of the
2    benefits of California by engaging in commercial activity on its websites with
3    California residents is misplaced.  As detailed above in Part III.C.1, the ticket store
4    has only resulted in a single sale, to *Plaintiff's counsel*.  Mandell Decl., ¶7.
5    Disregarding the fact that this solitary sale post-dated the filing of the Complaint
6    and Motion, the tickets were purchased by the Plaintiff for the sole purpose of
7    establishing jurisdiction (as described in Part III.C.1), and therefore cannot properly
8    serve as a basis for specific jurisdiction without offending the traditional notions of
9    fair play and substantial justice.

10    Further, Defendant Brand Technologies' websites do not establish purposeful
11    availment for specific jurisdiction.  In Amini Innovation Corp. v. JS Imports, Inc.,
12    this Court recently rejected the notion that non-resident defendants purposefully
13    availed themselves of the privileges and protections of California law by operating
14    an interactive website through which California residents could purchase products.
15    497 F.Supp.2d 1093, 1104 (C.D.Cal. 2007).  The Amini court distinguished between
16    *potential* commerce and *actual* commerce with the forum residents, concluding that
17    without evidence of actual commercial transactions through the website, purposeful
18    availment was not established.  Amini, 497 F.Supp.2d at 1104.

19    Likewise, Defendant Brand Technologies' hasn't purposeful availed itself, as
20    no actual sales to California customers have ever been transacted through their sites.

21    ## ii. The Defendants Have Not Purposefully Directed Their Activities Toward California.
22

23    The Defendants allegedly posted on their websites 35 photographs of pop star
24    Stacey Ferguson and her boyfriend in the Bahamas (the "Photos").[2]  Plaintiff has
25    failed to offer any evidence that Defendants' allegedly infringing acts were
26    expressly aimed at California or that Defendants knew the brunt of the alleged harm

27    ─────────────
28    [2] The Plaintiff makes allegations regarding other photographs appear for the first time in Plaintiff's Opposition and are irrelevant to the analysis of the Complaint.

Quintana Law
Group, APC

-10-

1  was likely to be suffered in California.  The Ninth Circuit has held that the second

2  prong of the "effects test" requires "something more" than foreseeability of harm to

3  the plaintiff, such as knowledge that the plaintiff was headquartered in California.

4  Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc., 106

5  F.3d 284, 288 (9th Cir. 1997), rev'd on other grounds 523 U.S. 340 (1998).

6       Until the initiation of this lawsuit, Defendants were unaware of the Plaintiff's

7  office in Los Angeles, as all previous communications with the Plaintiff were

8  through the Plaintiff's Florida office.  Mandell Decl., ¶16.  Without any evidence of

9  a conduct expressly aimed at the California, there is simply no basis for personal

10  jurisdiction over the Defendants in this matter.

11            **2. Defendants' Alleged Contacts With The State Of California Are**

12  **Not A "But For" Cause Of Plaintiff's Alleged Claims**

13       Plaintiff must also show that "but for" defendant's contacts with the forum

14  state, its claims would not have arisen.  Ballard v. Savage, 65 F.3d 1495, 1500 (9th

15  Cir. 1995).  Plaintiff fails to meet this standard, as it still does not identify a single

16  act or omission by Defendants in California that "but for" their performance or

17  nonperformance Plaintiff would have no claim.   Plaintiff's assertion that its

18  copyright infringement claim arises out of the Defendants' forum-related activity

19  of purchasing photographs from California businesses is unavailing.  Plaintiff

20  has alleged that Defendants stole photographs.  Opp:18:16-17.  Thus, Defendants

21  lawful purchase of completely unrelated photos is irrelevant; it cannot be said

22  that "but for" those purchases, Plaintiff's claim would not have arisen.  There is

23  no nexus between any "in forum" conduct by Defendants and the facts and events

24  which allegedly give rise to Plaintiff's claims.

25            **3. Exercising Personal Jurisdiction Over The Defendants In**

26  **California Would Be Unreasonable.**

27       Plaintiff fails to adequately discuss the factors enumerated by the U.S.

28  Supreme Court in Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102,

Quintana Law
Group, APC

-11-

1    113, 107 S.Ct. 1026, 1032, 94 L.Ed. 2d 92 (1987), when determining whether the

2    exercise of personal jurisdiction is reasonable and fair under the circumstances.

3    This is not surprising since most the factors strongly favor the Defendants.  To the

4    extend Plaintiff's hollow discussion on page 20 of its Opposition was intended to

5    discuss these factors, the contention are conclusory, immaterial and unsubstantiated.

6    **E. THE COURT SHOULD DISMISS THIS ACTION ON THE BASIS OF
7         FORUM NON CONVENIENS.**

8         Plaintiff's argument against transferring this case under the doctrine of <u>forum</u>

9    <u>non conveniens</u> is unsubstantiated.  The fact that the Defendants have two sets of

10   lawyers in this matter is entirely due to the Plaintiff's choice of forum.  Having been

11   sued in California court, the Defendants had little choice but to retain local counsel

12   in this district.  As argued in the original Motion to Dismiss, the private and public

13   interests at issue weigh in favor of dismissal of this matter on the grounds of <u>forum</u>

14   <u>non conveniens</u>.  Alternatively, the Complaint should be transferred to the United

15   States District Court for the Northern District of Ohio, Western Division for

16   disposition in accordance with 28 U.S.C. § 1404(a).

17   **F. CONCLUSION.**

18       For the reasons stated above and in the Defendants motion, the Court should

19   grant the relief sought by Defendants.

20   DATED: July 6, 2009                QUINTANA LAW GROUP
                                        A Professional Law Corporation

21

22

23

24                                     By: _____

25                                         Andres F. Quintana
                                           Attorneys for Defendants BRAND
26                                         TECHNOLOGIES, INC. and
                                           BRAD MANDELL

27

28

Quintana Law
Group, APC

-12-

## SUPPLEMENTAL DECLARATION OF BRADFORD MANDELL

I, BRADFORD MANDELL, declare and state as follows:

1.        I am a resident of County of Lucas, State of Ohio and over the age of eighteen years old. I have first-hand, personal knowledge of the facts stated herein, and if called upon as a witness, could and would competently testify thereto. This supplemental declaration is made in support of Defendants' Reply to Plaintiff's Opposition to the Motions to Dismiss for Lack of Personal Jurisdiction and *Forum Non Conveniens*, and Motion to Transfer Venue.

2.        I am the Chief Executive Officer of Brand Technologies, Inc., a corporation formed under the laws of the State of Ohio. I am properly authorized to make this Declaration on behalf of Brand Technologies, Inc. (hereinafter "the Company").

3.        The website www.gossipcenter.com is the evolution of www.gossipgirls.com to avoid any potential trademark issues and was launched by the Company at the end of May of 2009 to replace www.gossipgirls.com.

4.        The ticket store visible on www.gossipcenter.com is a private label offering provided by a company called Ticket Network Direct, a Ticket Network Inc.  Ticket Network Inc. is based in the State of Connecticut and one of the largest resellers of tickets in the world with similar relationships with more than 2,500 websites. When an individual clicks on the ticket store through www.gossipcenter.com, he or she is directed to a website owned and operated by Ticket Network Direct, not the Company.  The Company does not have any ownership interest in Ticket Network Inc.  Further, Ticket Network Direct's website is not hosted on the Company's servers.

5.        Ticket Network Direct's website page plainly identifies the merchant in two prominent locations as "Ticket Network Direct." Indeed, the alleged receipt attached to Marvix's counsel declaration as Exhibits A and C, clearly indicates that the seller and contact point is not the Company's website.

6.      Although the Ticket Network Direct ticket store link capability was placed on the Company's website at the beginning of 2009, it has never been officially launched.  The Company has never received any financial payment for a sale on the site as there has never been any commercial activity prior to the purchase by Marvix's counsel.  Thus, the illusion of commercial activity through Ticket Network Direct's ticket store is not only the sole creation of counsel but the actual activation by counsel.

7.      Ticket    Network    Direct    maintains    a    secured    site    at https://admin.ticketnetwork.com/Login.aspx which permits the Company to verify ticket sales and check commissions due to it for fiscal year 2009.  Attached hereto as Exhibit E is the opening page from that secured website.  According to the transaction report available through the Ticket Network Direct website, from January 1, 2008 through July 5, 2009, there has been *one* ticket sale through this third-party site during that time frame – the one performed by Mavrix's counsel on June 24, 2009.  Attached hereto as Exhibit F is a true and correct copy of the Ticket Network Direct report generated today (July 6, 2009) in connection with the Company's websites linked to Ticket Network Direct.  As the report indicates, the Company is supposed to make $7.60 on the transaction.  The Company would be happy to refund Mavrix's counsel that amount for the circus tickets his law firm purchased.

8.      The advertising for jobs asserted by Mavrix's counsel was an advertisement created and placed by a company called "Monster" through an advertising network agency and inserted into a space provided for advertising on the Company's website.  The advertisement specifically identifies Monster as the source of the job.   The Company does not control the content of any of the advertisements placed on the Company's website by advertising networks.  The Company only monitors such advertisement for legal violations.

Quintana Law
Group, APC

9.     The advertisement for hotels in San Diego, California identified by Mavrix's counsel is similar to the Monster scenario, explained above, in that it concerns another advertisement placed on the Company's website by an agency representing a third-party client.  This is similar to all of the advertisement, such as banks, airlines, cosmetics, etc.  These advertisements are not directly placed through the Company.

10.     The Company's current websites were originally designed and programmed by two independent contractors, Dan Pothier and Matt Zyrtuk, in 2007. Mr. Pothier and Mr. Zyrtuk are both Canadian citizens, who were working exclusively out of Canada at the time.  The Company's payments to them were mailed to their Canadian addresses.  Further, to the best of my knowledge, the Company's websites were developed on servers located in Canada, and at the time of the alleged infringement (which according to the Complaint, was during the April to May 2008 time frame) were operated out of Canada.   Presently, the websites are hosted on servers located in Austin, Texas.

11.     To the best of my knowledge, Mr. Pothier and Mr. Zyrtuk at some point apparently formed a new company called Incendia, Inc. in the State of California.  Neither I nor the Company have any ownership interest in Incendia. Although billing for website maintenance is technically through Incendia, the actual work continues to be performed in Canada.

12.     The Company's partnership with Fox News is merely the sharing of links.  The Company places a link to the top news stories occurring on Fox News and, several times a month, a link is created on Fox News to a story in one of the Company's websites.  There is no formal contractual or business relationship between the Company and Fox News.

13.     The company called Glam is, to my knowledge, an advertising network agency similar in type to Google and Value Click where advertisers create master contracts with the agency who then places advertisements on websites.  The

1    advertising monies are paid directly by the companies advertising their product or
2    services to the advertising network agency, who then pays the website owner.  The
3    agency has total control over which advertisements appear on the website and are
4    "sent" to the website.  To be sure, the Company does not have such control.   Glam
5    is the leading provider of premium advertisements to the Company's website and it
6    is the largest revenue source while Google and Value Click often supply the largest
7    number of actual advertising impressions to the Company's websites although the
8    revenue paid by them to the Company is lower.

9        14.     The subscription-based newsletter and Gossip Center Club are
10   nothing more than an "opt in" email where new stories with links to the websites are
11   sent each day to an email address.  These emails are simply an extension of the
12   websites providing easier access than typing in the Uniform Resource Locator or
13   using a search engine.  There is no commercial aspect to the newsletter and club.
14   The Company does not impose any registration fees on any user, the user list has
15   never been sold to anyone and no advertisements have ever been placed on the
16   emails sent to these users.

17       15.     Readers of the Company's websites may post comments that the
18   Company attempts to screen.  However, such activity is negligible with less
19   than one word in ten thousand appearing on the website provided by a user.  Further,
20   although there is a function designated image uploading, no picture or image
21   provided by a reader has ever been posted on the Company's website.  It is a totally
22   informative, non interactive website.  The Company website is not a social network.
23   Finally, there is no way for the Company to determine where its users reside.

24       16.     The Company has no knowledge as to when Mavrix registered to do
25   business in the State of California.  However, all communications between the
26   Company and Mavrix has been through Mavrix's Florida office and telephone
27   number as well as Mavrix's Florida attorney.

28

Quintana Law
Group, APC

-4-

17.     The company called Quattro Wireless is a third party company that creates mobile versions of websites and hosts them on its servers charging a fee and sharing revenues.  Quattro provides the mobile version of the Company's website along with hundreds of other major websites such as ESPN, CBS, Boston Herald, the NFL, and Playboy.  To date, the Company has paid Quattro more money than it received from Quattro.

18.     The Company is not licensed to do business in the State of California, pays no taxes in the State of California, and has no assets in the State of California.

I declare under penalty of perjury under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed this 6th day of July, 2009, in Toledo, Ohio.

Bradford Mandell

# EXHIBIT E

WebAdmin Login                                                                    Page 1 of 1

ticketnetwork                    860.870.2400
WebAdmin            137 Bolton Road, Vernon, CT 06066

**Login**                                                    **Bookmark this site!**

Username:
Password:
                                    [ Log In ]  ☐ Remember Me

**Forgot Your Password?**



860.870.3400
137 Bolton Road, Vernon, CT 06066

**WebAdmin**                                                                        **Customer ID 3550**

| Reports | Tools | WCP | Options | Help |
|---------|-------|-----|---------|------|

Forums | Log Out

## Help Center

**Website Guides**

Web Control Panel Training Manual

HTML Web Plugin Files (.zip)

Web Plugin Instructions

**Custom Websites**

Interested in a custom website?

Visit our web development partner at TicketPlatform.com »»

## TicketNetwork Announcement Center

**Submit Your Own Support Ticket Request**

In your Web Admin click Options »» Contact Support

Select the Product, usually Web Sites/Web Services, then Module, usually Other.

Then select the Issue Type. Leave Version blank. Most issues should be a Normal Priority

In Details, put as much information as possible to ensure there is no delay in completing your request.

If you have a graphic or file, send an email to websites@ticketnetwork.com along with the ticket number you just created.

**Web Control Panel:**

The Web Control Panel is now active in your web admin. The software version will no longer function as of August 1, 2007.

**How To Setup Your Domain:**

Log in to your registrar and change the DNS "A" records only, to point to our web server. (Ticket Network DNS Server IP: 66.230.78.200)

NOTE: Your nameserver MUST be set to the Registrar's default nameserver.

**Test Orders :**

DO NOT place test orders on your site. Contact your account manager for assistance.

## Contact Information

**Corporate Headquarters**

Ticket Software LLC
137 Bolton Road
Vernon, CT 06066 USA

**Your TicketNetwork Direct Team**

Christopher Majeske
860.870.3400 x 213
majeske@ticketnetworkdirect.com

Steve Steinfeldt
860.870.3400 x 214
steves@ticketnetworkdirect.com

Christina Palermo
860.870.3400 x 250
christinap@ticketnetwork.com

Harmon Howe
860.870.3400 x143
harmonh@ticketnetwork.com

Chris Love
860.870.3400 x144
chrisl@ticketnetwork.com

Ayodeji Adediran
Technical Support
websites@ticketnetwork.com

# EXHIBIT F



1   PROOF OF SERVICE

2

STATE OF CALIFORNIA )

3                                            ) ss:

4   COUNTY OF LOS ANGELES )

5       I am employed in the County of Los Angeles, State of California.  I am over
the age of eighteen (18) years and not a party to the within action.  My business
6   address is 26135 Mureau Road, Suite 101, Calabasas, California 91302

7       On July 6, 2009, I served the document described as

8   **DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION,**
9   ***FORUM NON CONVENIENS*, OR TRANSFER VENUE**

10  on counsel for the parties in this action, or on the parties in propria persona,
11  addressed as stated on the attached service list:

12  [ X ]   BY MAIL:  By placing true and correct copies thereof in individual sealed
13  envelopes, with postage thereon fully prepaid, which I deposited with my employer
for collection and mailing by the United States Postal Service.  I am readily familiar
14  with my employer's practice for the collection and processing of correspondence for
15  mailing with the United States Postal Service.  In the ordinary course of business,
this correspondence would be deposited by my employer with the United States
16  Postal Service on that same day.  I am aware that on motion of the party served,
17  service is presumed invalid if postal cancellation date or postage meter date is more
than one day after the date of deposit for mailing in affidavit.
18

19  [X]   (FEDERAL) I declare that I am employed in the office of a member of the bar
20  of this Court at whose direction the service was made.

21  EXECUTED on July 6, 2009 at Calabasas, California.

22

23

24                                    John M. Houkom

25

26

27

28

Quintana Law
Group, APC

-13-

1

## **SERVICE LIST**

2

3   Peter R. Afrasiabi, Esq.
    Christopher W. Arledge, Esq.
4   John Tehranian, Esq.
    TURNER GREEN LLP
5   535 Anton Boulevard, Suite 850
6   Costa Mesa, California 92626

7   *Counsel for Plaintiff Mavrix Photo, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Quintana Law
Group, APC